**Joe JACOBY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Steamfitters Local Union No. 342 of the United Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO Intervenor.**

**No. 99–1450.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 2000.

Decided Dec. 12, 2000.

Dylan B. Carp argued the cause for petitioner. With him on the briefs were Jeffrey L. Rhodes and Glenn M. Taubman.

Meredith L. Jason, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Leonard R. Page, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel and Fred L. Cornnell, Supervisory Attorney.

James B. Coppess argued the cause for intervenor. With him on the brief were John L. Anderson and Laurence Gold.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Under a labor agreement governing construction work at a refinery jobsite in California, Steamfitters Local Union No. 342 held an exclusive right to dispatch workers to subcontractor Contra Costa Electric. Petitioner Joe Jacoby, a member of the union for 27 years, registered for employment through the union's hiring hall; due to his skills and experience, his name was placed on the highest priority "A" list. For a period the union mistakenly dispatched several lower-priority individuals ahead of Jacoby. On discovery of the error, it dispatched Jacoby. All parties agree, for current purposes at least, that the priority mix-up was merely negligent, and reflected no intentional wrongdoing.

Jacoby filed an unfair labor practice charge with the National Labor Relations Board, and the Board's General Counsel issued a complaint. After a hearing an administrative law judge found that the union's negligent deviation from established hiring hall rules breached its duty of fair representation and thereby violated §§ 8(b)(1)(A) & (2) of the National Labor Relations Act as amended (the "NLRA"), 29 U.S.C. § 158(b)(1)(A) & (2). *Steamfitters Local No. 342 (Contra Costa Electric)*, 329 N.L.R.B. No. 65, slip op. at 10–12 (Dec.5, 1995). The Board reversed, ruling that the union's negligence violated neither the duty of fair representation nor the Act. *Steamfitters Local No. 342 (Contra Costa Electric)*, 329 N.L.R.B. No. 65, 1999 WL 818609 (Sept. 30, 1999) (*"Board Decision"*). Although the Board agreed that the ALJ had correctly applied the Board's previous decision in *Iron Workers Local 118 (California Erectors)*, 309 N.L.R.B. 808 (1992), it reasoned that that decision, as well as the ALJ's findings, were inconsistent with the Supreme Court's pronouncements about the duty of fair representation in *United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), and *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). *Board Decision*, 329 N.L.R.B. No. 65, slip op. at 2–4. In addition, the Board found that the union's negligent conduct did not, apart from the fair representation issue, independently violate the Act. *Id.* at 4.

We have held that the Board's interpretation of the duty of fair representation is entitled to deference under *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), when the Board enforces that duty as part of its jurisdiction to identify and remedy unfair labor practices. *Ferriso v. NLRB*, 125 F.3d 865, 869 (D.C.Cir.1997); *Finerty v. NLRB*, 113 F.3d 1288, 1291 (D.C.Cir. 1997). We shall explain why this is so

despite the fact that the duty *also* exists as a judge-made, court–enforced duty. But *Chevron* does not help an agency that rests its decision on a misinterpretation of Supreme Court precedent, as the Board did here. Accordingly, we reverse and remand the case to the Board for it to address the duty of fair representation anew.

In addition, the Board's conclusion that the union's negligence did not independently violate the Act is, as we explain below, intertwined with the issue of the duty of fair representation. Accordingly, we find that it would be premature to rule on it before the Board has had an opportunity to revisit the question on remand.

\* \* \*

■ The duty of fair representation originated in the context of the Railway Labor Act, judicially inferred from that statute and enforceable in the courts. See *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The Supreme Court extended the *Steele* principle to the NLRA in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), finding that the statutory authority of unions as exclusive bargaining representatives under Sec. 9(a) of the NLRA, 29 U.S.C. § 159(a), also gave rise to a duty of fair representation, requiring unions to "make an honest effort to serve the interests of all [bargaining unit] members, without hostility to any." *Id.* at 337, 73 S.Ct. 681. A union breaches this duty when its actions are "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Originally, the duty was the exclusive province of the courts, falling within the federal courts' general federal question jurisdiction. See *Syres v. Oil, Chemical and Atomic Workers Local 23*, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955)(mem.), *rev'g* 223 F.2d 739 (5th Cir. 1955). Beginning with its decision in *Miranda Fuel Co.*, 140 N.L.R.B. 181, 1962 WL 16149 (1962), however, the NLRB has enforced the duty of fair representation itself as part of its authority to identify and remedy unfair labor practices. We have upheld this branch of the Board's unfair labor practice jurisdiction. See *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 31–32 (D.C.Cir. 1995); *Truck Drivers and Helpers, Local Union 568 v. NLRB*, 379 F.2d 137, 141–42 (D.C.Cir.1967).

■ At the same time, the Supreme Court refused to find that the Board's enforcement of the duty of fair representation preempted judicial jurisdiction over the duty of fair representation inferred from the NLRA. *Vaca v. Sipes*, 386 U.S. 171, 183, 188, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). See also *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 49, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998); *Breininger v. Sheet Metal Workers Int'l Ass'n Local No. 6*, 493 U.S. 67, 74–75, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). As a result the duty is subject to a kind of dyarchy. The Board is entitled to *Chevron* deference when it interprets the duty as part of its unfair labor practice jurisdiction, yet many cases involving the duty continue to originate in the courts. See, e.g., *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

■ And it is important to emphasize that for these court adjudicated cases the *Board*'s definition of the duty of fair representation for purposes of adjudicating unfair labor practices appears only marginally relevant. The Supreme Court in *Breininger* explicitly "reject[ed] the proposition that the duty of fair representation should be defined in terms of what is an unfair labor practice." 493 U.S. at 86, 110 S.Ct. 424. "[T]here is no reason to equate breaches of the duty of fair representation with unfair labor practices." *Id.* Thus, for cases arising in the courts, NLRB interpretations are relevant for what they

may contribute on their intellectual merits, enjoying deference to the extent of their "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Nonetheless, as we explained, the Board's decision here is reviewable under the *Chevron* doctrine.

▮ The duty of fair representation clearly extends to a union's operation of an exclusive hiring hall. See *Breininger*, 493 U.S. at 87–88, 110 S.Ct. 424 (1989). Prior decisions of the Board described the duty, in the hiring hall context, in rather demanding terms. Ruling in favor of the Board in such a case, we said:

> [A]ny departure from established exclusive hiring hall procedures which results in a denial of employment to an applicant falls within that class of discrimination which inherently encourages union membership, breaches the duty of fair representation owed to all hiring hall users, and violates Section 8(b)(1)(A) and (2) [of the NLRA], unless the union demonstrates that its interference with employment was pursuant to a valid union-security clause or was necessary to the effective performance of its representative function.

*Boilermakers Local No. 374 v. NLRB*, 852 F.2d 1353, 1358 (D.C.Cir.1988) (quoting *Teamsters Local 519 (Rust Engineering)*, 276 N.L.R.B. 898, 908, 1985 WL 57106 (1985)). And we also said that breach of the duty required no evidence of intent to discriminate:

> No specific intent to discriminate on the basis of union membership or activity is required; a union commits an unfair labor practice if it administers the exclusive hall arbitrarily or without reference to objective criteria and thereby affects the employment status of those it is expected to represent. "By wielding its power arbitrarily, the Union gives notice that its favor must be curried, thereby encouraging membership and unquestioned adherence to its policies."

*Id.* (quoting *NLRB v. International Ass'n of Bridge, Structural & Ornamental Iron*

*Workers, Local 433,* 600 F.2d 770, 777 (9th Cir.1979)).

The Board itself, applying the standard that we upheld in *Boilermakers,* found a breach of the duty (and an unfair labor practice) in circumstances virtually identical to the present ones. In *Iron Workers Local 118 (California · Erectors),* 309 N.L.R.B. 808, 1992 WL 389435 (1992), it ruled that union officials breached their duty of representation when, "through mistake and inadvertence," they failed to dispatch a worker to a job to which he should have been referred under exclusive hiring hall procedures. *Id.* at 812. Unsurprisingly, the ALJ applied *California Erectors* in its decision below.

In reversing the ALJ, the Board here acknowledged that her reading of that case was "correct," but found that continued application of *California Erectors* would be inconsistent with the Supreme Court decisions in *United Steelworkers of America v. Rawson,* 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), and *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). *Board Decision,* 329 N.L.R.B. No. 65, slip op. at 2.

There is undoubtedly language in these Supreme Court decisions supporting the Board's view. Both explicate the standard earlier laid down by the Court in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), which said that a union breached the duty of fair representation when its actions were "arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. 903. In *Rawson,* the Court rejected a claim that a union breached the duty when it negligently performed mine-safety related duties pursuant to a collective bargaining agreement. The Court observed that "[t]he courts have in general assumed that mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation, and we en-

dorse that view today." 495 U.S. at 372–73, 110 S.Ct. 1904.

*O'Neill* involved a claim that the Air Line Pilots Association breached its duty of fair representation in its negotiation and acceptance of a strike settlement. The Court held that the *Vaca* standard "applies to all union activity, including contract negotiation." 499 U.S. at 67, 111 S.Ct. 1127. Moreover, it explained that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Id.* (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)) (internal citation omitted).

■ Neither *Rawson* nor *O'Neill* specifically concerned the duty owed by a union when it operates an exclusive hiring hall. In its decision here, however, the Board reasons that the two cases, read together, mandate that merely negligent conduct can never breach the duty of representation in any context, including that of the hiring hall. See *Board Decision,* 329 N.L.R.B. No. 65, slip op. at 2.

But as Jacoby points out, the Board's reading of *Rawson* and *O'Neill* cannot be reconciled with our decision in *Plumbers & Pipe Fitters.* There we considered and rejected the argument that *O'Neill* undermined the standard governing a union's operation of an exclusive hiring hall—specifically the principle that a union operate a hiring hall by "reference to objective criteria." 50 F.3d at 32–33. We acknowledged that fragments from *O'Neill* such as the passage quoted above might, if read in isolation, support the contention that a "highly deferential" standard must be applied to the evaluation of union's actions operating a hiring hall. 50 F.3d at 33. But we concluded that the "Court did not intend to weaken the standard of review applied to a union's operation of a hiring hall." *Id.*

In support of this conclusion we relied on the drastic difference in context. In *O'Neill* the Court's focus was on "protecting the content of negotiated agreements from judicial second-guessing." *Id.* The operation of a hiring hall, by contrast, was one "where the union has assumed the role of employer, as well as representative, and where the risk of judicial second-guessing of a negotiated agreement that was of such concern to the Court in *O'Neill* is simply not present." *Id.* We also relied on the Supreme Court's decision in *Breininger,* issued only one year before *Rawson* and two years before *O'Neill,* where the Court said that the imbalance of power and possibilities for abuse created by union operation of a hiring hall were such that "if a union does wield additional power in a hiring hall by assuming the employer's role, its responsibility to exercise that power fairly *increases* rather than *decreases.*" *Breininger,* 493 U.S. at 89, 110 S.Ct. 424 (quoted in *Plumbers & Pipe Fitters,* 50 F.3d at 34). Thus, we wound up, "[w]e remain confident that unions that operate hiring halls without objective criteria violate their duty of fair representation. This was the standard we approved in *Boilermakers* and that the ALJ properly applied in this case. Absent clear instructions from the Supreme Court, we decline to weaken this principle." 50 F.3d at 34.

In its decision here, the Board sought to reconcile *Breininger*'s statement that "additional power" entailed increased responsibility with its interpretation of *Rawson* and *O'Neill.* It reasoned that in *Breininger* the Court was merely rejecting the argument that the duty of fair representation did not apply at all in the hiring hall context and had meant the language about a union's increased responsibility not to refer to any heightened degree of duty, but merely to the fact that a union "takes on additional responsibilities" when it operates a hiring hall. *Board Decision,* 329 N.L.R.B. No. 65, slip op. at 2. Nothing in the surrounding language in *Breininger* lends support to this theory.

The question before us today differs from that in *Plumbers & Pipe Fitters* primarily with regard to two details, both ultimately insignificant. First, this case turns on a different aspect of the legal standard defined in *Boilermakers*. Whereas *Plumbers & Pipe Fitters* involved the operation of a hiring hall "without reference to objective criteria," see *Boilermakers*, 852 F.2d at 1358, the facts here implicate the rule precluding departures "from established exclusive hiring hall procedures," *id*. But this distinction does nothing to help the Board's position. That position is premised on the conclusion that *O'Neill* generally precludes heightened scrutiny in the hiring hall context, but in *Plumbers & Pipe Fitters* we concluded that the "Court did not intend to weaken the standard of review applied to a union's operation of a hiring hall." 50 F.3d at 33. See also *Radio-Electronics Officers Union (Radio Officers Union) v. NLRB*, 16 F.3d 1280, 1284–85 (D.C.Cir. 1994) (applying *Boilermakers*'s "departure" standard).

In addition, one might argue that in the present context the *Boilermakers* standard is more vulnerable to the claim of erasure by *O'Neill* and *Rawson*, as this case involves a claim of negligence, thus encountering *Rawson*'s conclusion that "mere negligence" did not violate the duty of fair representation in the contract administration context. But the Board's application of *Rawson* relies exclusively on the type of "one–size–fits–all" theory that *Plumbers & Pipe Fitters* rejected. And, once again, *Rawson* is not a hiring hall case. It concerned the specific question of whether a union violates the duty of fair representation through negligent enforcement of a collective bargaining agreement. Although the Court endorsed what courts had "in general assumed," namely, that negligence does not "state a claim for breach of the duty of fair representation," 495 U.S. at 372–73, 110 S.Ct. 1904, it never considered the applicability of this principle to the hiring hall. Thus we see no reason why *Rawson*'s general statements on negligence should be regarded as any less subject to qualification than *O'Neill*'s statements about "behavior so far outside a range of reasonableness as to be irrational." 499 U.S. at 67, 111 S.Ct. 1127.

The Board's decision here seems in effect to recognize its contradiction of *Plumbers & Pipe Fitters*. Rather than try to distinguish the case, the Board simply observed that "the circuit court's assertion that the standard for operation of a hiring hall can and should be different from the standard for contract administration seems to us to be unsupportable." *Board Decision*, 329 N.L.R.B. No. 65, slip op. at 3 n.19.

Intervenor's brief relies on two additional decisions issued after *Plumbers & Pipe Fitters*, one from the Supreme Court, *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998), and one from this circuit, *Thomas v. NLRB*, 213 F.3d 651 (D.C.Cir.2000). As neither case concerned nor even mentioned the hiring hall context, neither affects our analysis in *Plumbers & Pipe Fitters*.

The Board's reliance on its mistaken analysis of *O'Neill* and *Rawson* compels a remand. "An agency action, however permissible as an exercise of discretion, cannot be sustained 'where it is based not on the agency's own judgment but on an erroneous view of the law.'" *Sea-Land Service, Inc. v. Department of Transportation*, 137 F.3d 640, 646 (D.C.Cir.1998) (quoting *Prill v. NLRB*, 755 F.2d 941, 947 (D.C.Cir.1985)). On remand, the Board must consider whether, given the union's heightened duty of fair dealing in the context of a hiring hall, the union's negligent failure to adhere to its referral standards was an unfair labor practice. In remanding, of course, we express no opinion on the validity of any alternate grounds that the Board might use to overrule *California Erectors*.

We now turn to the Board's second holding—that the union's conduct did

not, quite apart from any breach of the duty of fair representation, violate §§ 8(b)(1)(A) & 8(b)(2) of the Act. The latter bars a union from causing an employer to discriminate against an employee in violation of § 8(a)(3), which in turn bars an employer's discrimination against an employee "to encourage or discourage union membership." A violation of § 8(b)(2) would derivatively violate § 8(b)(1)(A)'s ban on union restraint of employees in the exercise of their rights under § 7 of the Act. *Board Decision*, 329 N.L.R.B. No. 65, slip op. at 4; see also *id.* at 8 (Member Brame, dissenting); *Radio Officers' Union of Commercial Telegraphers Union v. NLRB*, 347 U.S. 17, 42, 74 S.Ct. 323, 98 L.Ed. 455 (1954).

The Board in effect has said that its rationale in *Boilermakers* is inapplicable to this context. There we upheld its finding that "[a]ny departure from established exclusive hiring hall procedures which results in a denial of employment to an applicant falls within that class of discrimination which inherently encourages union membership," and thereby violates §§ 8(b)(1)(A) and (2) of the Act. 852 F.2d at 1358. And we endorsed its underlying rationale: "By wielding its power arbitrarily, the Union gives notice that its favor must be curried, thereby encouraging membership and unquestioned adherence to its policies." *Id.* Here the Board reasoned:

> While this reasoning makes sense when applied to the volitional actions of union officials, it is unpersuasive when applied to simple mistakes. When as in this case, a union officer in charge of referrals intends to follow the prescribed procedures and thinks he has done so, his inadvertent failure to do so, even to the detriment of an applicant, simply does not carry the message that applicants had better stay in the good graces of the union if they want to ensure fair treatment in referrals.

*Board Decision*, 329 N.L.R.B. No. 65, slip op. at 4.

Given the focus of § 8(b)(2) on discrimination, we cannot fault the Board's view that a purely negligent breach of the rules would lack the signaling effect that the provision, and the Board, sought to avoid. But the Board's analysis is complicated by its additional holding that this approach does not contradict any of its earlier decisions—a statement that, if true, renders inapplicable the Board's duty to give a "reasoned justification for any departure from its prior policies or practices." *Pittsburgh Press Co. v. NLRB*, 977 F.2d 652, 655 (D.C.Cir.1992) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 57, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Given that the underlying theory in *California Erectors* (which the Board does explicitly overrule) and other duty of fair representation cases is that breaches of the duty are themselves violations of §§ 8(b)(1)(A) & (2), see, e.g., *California Erectors*, 309 N.L.R.B. at 811, 812 (treating duty of fair representation breach as a violation of §§ 8(b)(1)(A) and (2)), the Board in essence argues that the standard for judging violations of the same statutory provisions may depend upon whether or not a complaint or ruling specifically invokes the magic words "duty of fair representation." The Board does not cite, and we have been unable to find, any evidence that in hiring hall cases the Board has ever applied different *standards* depending on whether the complaint invoked the duty of fair representation or not. See, e.g., *Laborers Local No. 135 (Bechtel Corp.) v. Huggins*, 271 N.L.R.B. 777, 780, 1984 WL 36753 (1984) (cited by the Board in the non-duty of fair representation context, see *Board Decision*, 329 N.L.R.B. No. 65, slip op. at 4 & n.26, and holding that "[a] departure from established exclusive hiring hall procedures that results in a denial of employment to any applicant inherently encourages union membership and therefore violates Section 8(b)(1)(A) and (2) without regard to the presence of unlawful motivation.") Rather, the Board appears merely to argue that

in cases in which it has found a violation of §§ 8(b)(1)(A) & (2) without explicitly invoking the duty of fair representation, the *facts* have never involved purely negligent departures from exclusive hiring hall rules. See *id.*

At the time of the Board's decision, of course, the effect of its holding regarding these "independent" violations of §§ 8(b)(1)(A) & (2) was to ensure that, in the relevant context, the statute imposed no broader liability independent of the duty of fair representation than as construed with that duty. Our reversal on the duty of fair representation theory now puts the question in a different light. If, on remand, the Board again decides to overrule *California Erectors*, it will need to provide a reasoned justification beyond its current theory of compulsion by the Supreme Court—and any successful justification is likely to support the Board's more general interpretation of the relevant statutory provisions, assuming that that interpretation does in fact depart from prior Board precedent. So our remand on the Board's first holding makes it, as a practical matter, premature to rule on the sufficiency of its second one.

■ Similarly, we do not pass judgment on the theory proposed by Member Brane in his dissent, to the effect that if Blevins's individual negligence did not itself constitute an unfair labor practice, then the union's subsequent failure to make Jacoby whole did. *Board Decision,* 329 N.L.R.B. No. 65, slip op. at 7 (Member Brane, dissenting). The Board refused to consider this theory on the grounds that it was raised neither in the General Counsel's complaint nor during oral argument, see *Board Decision,* 329 N.L.R.B. No. 65, slip op. at 4 n.27, and Jacoby has not properly appealed this ruling.

For the reasons given we reverse and remand the case to the Board.

*So ordered.*