Steven LUCAS, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 00–71452.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2002.

Filed April 16, 2003.

Dylan B. Carp, San Francisco, CA, argued the case for the petitioner. Glenn M. Taubman, Springfield, VA, assisted on the briefs.

Jeffrey L. Horowitz, NLRB, Washington, DC, argued the case for the respondent. Frederick C. Havard, NLRB, Washington, DC, assisted on the briefs.

Before: WALLACE, KOZINSKI and PAEZ, Circuit Judges.

Opinion by Judge PAEZ; Concurrence by Judge WALLACE.

PAEZ, Circuit Judge:

Steven Lucas petitions for review of a decision of the National Labor Relations

Board ("Board"). Lucas claims that the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Local 720, AFL–CIO ("Union") violated sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act[1] (the "NLRA" or the "Act") by refusing to readmit him to its exclusive hiring hall in March 1995. After an administrative hearing, the Administrative Law Judge ("ALJ") found that the Union's refusal to reinstate Lucas was arbitrary and unfair, and therefore constituted an unfair labor practice under sections 8(b)(1)(A) and 8(b)(2) of the NLRA.

The Board reversed and dismissed the complaint. Applying the "wide range of reasonableness" standard articulated in *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 81, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (internal quotation marks omitted), it determined that the Union's refusal to permit Lucas to re-register was not arbitrary in light of its finding that he had been permanently expelled from the hiring hall in 1994 for fifteen years of misconduct.

We conclude that in dismissing Lucas's complaint, (1) the Board erred in applying *O'Neill's* highly deferential standard in lieu of the heightened duty of fair dealing that applies in the exclusive hiring hall context, and (2) the Board's finding that the Union's refusal to allow Lucas to re-register was necessary to protect the effective representation of its constituency was not supported by substantial evidence. Accordingly, we reverse the Board's decision and remand so that the Board may enter an appropriate remedial order in favor of Lucas.

## BACKGROUND

The Union operates an exclusive hiring hall[2] in the Las Vegas, Nevada area pursuant to a collective bargaining agreement with the Production Services Contractors Association of Las Vegas. Between 1981 and 1992, Lucas was a member in good standing with the Union and was referred to work assignments through the hiring hall. In 1992, Lucas took an honorable withdrawal from the Union, but the hiring hall continued to refer him out for employment until May 1994.

In early May 1994, Lucas entered the Union hiring hall to pick up an overdue check and was told by a Union employee that the Union would no longer refer him to work assignments. On May 16, 1994, Lucas filed a charge with the Board, alleging that the Union's refusal to refer him was unlawful. Shortly thereafter, the Union Executive Board decided to expel Lucas from the hiring hall, claiming that he had engaged in misconduct over a fifteen-year period. Neither the Union nor any of its agents informed Lucas that he had been expelled. Instead, only when the Board's Acting Regional Director ("Regional Director") notified Lucas that he would not issue a complaint on Lucas's charge did Lucas learn that the Union's refusal to refer him was based on his having been expelled due to alleged complaints about his behavior at work assignments and towards Union officials.[3] Lucas

---

1. 29 U.S.C. § 158.

2. An exclusive hiring hall is akin to an employment agency where all employees hired by an employer are those referred by the union. *See Plumbers, Local Union 198 (Stone & Webster),* 319 N.L.R.B. 609, 611–12, 1995 WL 669121 (1995).

3. The Regional Director's letter did not cite any specific instance of misconduct nor any specific employer or Union official who had complained about Lucas's conduct.

did not appeal the Regional Director's decision.

Approximately ten months later, in March 1995, Lucas sought re-admission to the hiring hall, but the Union refused to reinstate him. According to Lucas, in early 1995, he went to the hiring hall and attempted to sign the out-of-work list for subsequent referral to an employer. A Union employee refused to allow Lucas to sign in and allegedly questioned his emotional and mental stability. On March 3, 1995, Lucas sent a letter to the Union President, explaining that he had attempted to sign in for referral but had not been dispatched, listing the job classifications for which he was available, and requesting referral. He attached a letter written by Dr. Lynn Larson, a clinical psychologist, in support of his request. Dr. Larson opined that there was "no reason, from a psychological stand point [sic], that Mr. Lucas should not be considered fit and able to be employed at this time."

At about the same time, in early March 1995, Lucas contacted AVW Audio Visuals, Inc. ("AVW"), a signatory employer to the collective bargaining agreement with the Union, and informed AVW of his availability for work at an upcoming convention. On March 22, 1995, AVW name-requested[4] Lucas from the hiring hall to work at that convention. The hiring hall refused to refer Lucas on the ground that it had permanently expelled him from the hiring hall in May 1994.

Lucas filed a second charge with the Regional Director alleging that the Union had engaged in an unfair labor practice when it refused to readmit him and to refer him to AVW in March 1995. The Board's General Counsel subsequently is-

sued an unfair labor practice complaint alleging that the Union violated 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(2) by refusing to reinstate Lucas and by denying him work referrals through the hiring hall. An ALJ held an evidentiary hearing and, on February 29, 1996, issued a decision finding that the Union had violated the Act. *See Stage Employees Local 720 (AVW Audio Visual)*, No. 28–CB–4351, 2000 WL 1311111, at *6 (N.L.R.B. Sept.12, 2000) (reproducing the ALJ's decision).

The ALJ found that there was "no proof that Lucas knew or should have know [sic] in 1994 that not only was he barred permanently from use of the Union's hiring hall, but[also] that Lucas could do nothing to change the Union's position." *Id.* The ALJ rejected the Union's contention that "once unfit, always unfit," as the Union had failed to present any credible evidence or "persuasive argument to rebut the presumption that the effect of refusing to re-register Lucas in its hiring hall is to encourage union membership on the part of all employees who have perceived the Union's display of power." *Id.* The ALJ further found that the Union lacked objective standards for operating the referral service, and that this practice was arbitrary and unfair to Lucas and to all others wishing to access the Union's exclusive hiring hall. *See id.*

The Union filed exceptions and appealed the ALJ's decision to the Board, contending that it had no obligation to readmit Lucas to the hiring hall. The Board declined to adopt the ALJ's decision and dismissed the complaint. *Id.* Contrary to the ALJ, the Board concluded that the Union's refusal to re-register Lucas was not arbitrary and that the Union had

---

4. Under section 5.03(f) of the Labor Agreement, an employer could request by name "any qualified unemployed individual registered on List 'A' for regular or extra work who is available and who, within the previous six (6) months, has worked for the Employer now seeking to reemploy him."

"demonstrated that its conduct was necessary to protect the representative role that it performs in administering an exclusive hiring hall." *Id.* at *3. Recognizing that the Union owed a duty of fair representation to all applicants wishing to use the hiring hall, the Board concluded that the Union's refusal to reinstate Lucas was well within the "wide range of reasonableness" standard articulated in *O'Neill.*[5] *Id.* at *4–*5. The Board pointed to Lucas's fifteen years of alleged misconduct which led to his expulsion as a reasonable basis for refusing to readmit Lucas in March 1995, noting that this denial was necessary to maintain the integrity and efficiency of the Union's hiring hall operations. Accordingly, the Board concluded that the Union had neither breached its duty of fair representation nor engaged in an unfair labor practice by encouraging union membership. *See id.* at *5. It further determined that, although the Union had not acted in accordance with a specific written policy governing re-admission, it would be inappropriate for the Board to dictate the operating rules that a particular hiring hall must follow. *See id.* at *4.

### STANDARD OF REVIEW

 We will uphold a decision by the Board if its findings of fact are supported by substantial evidence and if it correctly applied the law. *See NLRB v. Calkins,* 187 F.3d 1080, 1085 (9th Cir.1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Todd Pac.*

5. 499 U.S. at 81, 111 S.Ct. 1127.

6. As a preliminary matter, we agree with both the Board and the ALJ that Lucas's challenge here is not time-barred by section 10(b) of the Act.
 *See* 29 U.S.C. § 160(b). In his March 1995 charge, Lucas challenged the Union's refusal to readmit him to the hiring hall and refer

*Shipyards Corp. v. Dir., Office of Workers Comp. Programs,* 914 F.2d 1317, 1320 (9th Cir.1990) (internal quotation marks omitted). We defer to the Board's interpretation and application of the National Labor Relations Act, as long as the Board's interpretation is "reasonable and not precluded by Supreme Court precedent." *NLRB v. Advanced Stretchforming Int'l, Inc.,* 233 F.3d 1176, 1180 (9th Cir.2000) (internal quotation marks omitted). However, where the Board rests its decision on a misinterpretation of Supreme Court precedent, we need not give the Board's interpretation any particular deference. *See Jacoby v. NLRB,* 233 F.3d 611, 614 (D.C.Cir.2000) ("*Chevron [U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)] does not help an agency that rests its decision on a misinterpretation of Supreme Court precedent, as the Board did here.").

### DISCUSSION[6]

### I.

### A.

 The Supreme Court has long recognized that a union has a statutory duty of fair representation under the NLRA. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Although the Act does not explicitly articulate this duty, the Court has held that the duty is implied from "the grant under § 9(a) of the NLRA, 29 U.S.C. § 159(a)

him to AVW, not whether the Union had adequate justification in May 1994 to expel him from the hiring hall. As the ALJ and the Board determined, the Union's refusal to reinstate Lucas was a separate event that occurred within six months of the filing of the charge.

(1982 ed.), of the union's exclusive power to represent all employees in a particular bargaining unit." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 87, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). In *Breininger*, the Court reasoned that this authority to represent all employees necessarily included the obligation to do so in a non-discriminatory manner. *See id.* at 79, 87–88, 110 S.Ct. 424. The duty of fair representation therefore "serves as a 'bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.'" *Id.* at 87, 110 S.Ct. 424 (quoting *Vaca*, 386 U.S. at 182, 87 S.Ct. 903).

In *Breininger*, the Supreme Court also noted that in *Miranda Fuel Co.*, 140 N.L.R.B. 181, 185, 1962 WL 16149 (1962), the Board had broadened the remedies available to union members by holding that a breach of the duty of fair representation also could be an unfair labor practice under sections 8(b)(1)(A) and 8(b)(2) of the Act. 493 U.S. at 86, 110 S.Ct. 424. The Court rejected the "proposition that the duty of fair representation should be defined in terms of what is an unfair labor practice." *Id.* Thus, a union may breach its duty of fair representation without committing an unfair labor practice and vice versa. *See id.* at 86–87, 110 S.Ct. 424.

■ In defining the scope of the duty of fair representation, the Court has held that it "applies to all union activity," *O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127, including its operation of an exclusive hiring hall, *see Breininger*, 493 U.S. at 87–88, 110 S.Ct. 424. Further, since 1944, the Court has recognized that when a union decides to operate a hiring hall, it takes on added responsibility because it wields a special power over workers' livelihood. *See id.* at 89, 110 S.Ct. 424 ("[I]f a union does wield additional power in a hiring hall by assuming the employer's role, its responsibility to exercise that power fairly *increases* rather than *decreases*. That has been the logic of our duty of fair representation cases since *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. [192,] 200, 65 S.Ct. 226, 89 L.Ed. 173 [ (1944) ].").

■ We have also recognized this increased union control over workers' access to employment opportunities in noting that hiring halls first came into existence to "eliminate wasteful, time-consuming, and repetitive scouting for jobs by individual workmen, and haphazard, uneconomical searches by employers." *NLRB v. Wismer & Becker*, 603 F.2d 1383, 1387 (9th Cir.1979) (per curiam). Because hiring halls provide a centralized source for generating continued employment, *see id.*, we have held that unions may not use a hiring hall to discipline particular individuals or to discriminate against nonunion members in order to encourage or discourage union membership, *id.* at 1388; *Carpenters Union Local No. 25 v. NLRB*, 769 F.2d 574, 580 (9th Cir.1985). Thus, when a union operates an exclusive hiring hall, it cannot act in " 'an unreasonable, arbitrary, or invidious manner in regard to an employee.'" *Wismer & Becker*, 603 F.2d at 1388 (quoting *Kling v. NLRB*, 503 F.2d 1044, 1046 (9th Cir.1975)). However, we have not yet had the opportunity to consider whether the "arbitrary" component of that duty must be applied in accordance with the "highly deferential" interpretation set forth in *O'Neill* in the hiring hall context. Because the D.C. Circuit has dealt with this very issue, we look to its decisions to guide our analysis in this respect.

In determining that the Union did not violate its duty of fair representation in refusing to readmit Lucas, the Board relied on *O'Neill* to conclude that the Union's action was not "so far outside a wide range of reasonableness ... as to be irrational."

Stage Employees Local 720, 2000 WL 1311111, at *4 (quoting *O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127). Although *O'Neill* emphasized that the duty of fair representation applies to all union activity, in the context of exclusive hiring halls, *O'Neill* must, as the D.C. Circuit recently explained in *Jacoby v. NLRB*, 233 F.3d 611, 616 (D.C.Cir.2000), be read in light of the added responsibility that unions have over workers' livelihood. Indeed, *O'Neill* arose in the context of union contract negotiations, not in the context of exclusive hiring hall operations.

At issue in *O'Neill* was a claim that the Air Line Pilots Association had breached its duty of fair representation in negotiating and accepting a strike settlement. 499 U.S. at 68–70, 111 S.Ct. 1127. The Court held that the duty of fair representation applied to "all union activity," including contract negotiations, but stated that in reviewing that process, courts should be highly deferential, "recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Id.* at 78, 111 S.Ct. 1127.

█ In two recent cases, the D.C. Circuit has recognized that, even in light of the deferential *O'Neill* standard, in the context of hiring halls, unions have a heightened duty of fair dealing toward all employees. *See Jacoby*, 233 F.3d at 616–18; *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 33–34 (D.C.Cir.1995). In recognizing this heightened duty, the D.C. Circuit emphasized that the "operation of a hiring hall is easily distinguishable from other activities where the union does not assume the role of employer." *Plumbers & Pipe Fitters*, 50 F.3d at 33.

In *Plumbers & Pipe Fitters*, two employees established that the union-run hiring hall had failed to use a ranking system or other objective criteria in its referral of rig welders. 50 F.3d at 31, 34–35. The D.C. Circuit noted that because of the "union's tremendous authority" and the "workers' utter dependence," the more deferential interpretation of the "arbitrary" component of the duty of fair representation was inappropriate in the hiring hall context. *See id.* at 32–34 (internal quotation marks omitted). It further explained that the Court's focus in *O'Neill* was on "protecting the content of negotiated agreements from judicial second-guessing," evidenced by its "repeated references to 'the substance of negotiated agreements' and 'the final product of the bargaining process.'" *Id.* at 33 (quoting *O'Neill*, 499 U.S. at 77–78, 111 S.Ct. 1127). Because *O'Neill* was especially "[a]ttentive to the special role of the union as negotiator" in holding that reviewing courts must afford a high degree of deference to union contract decisions, the Court "set forth the 'wholly irrational' language, stating that 'the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary.'" *Id.* (quoting *O'Neill*, 499 U.S. at 78, 111 S.Ct. 1127 (internal quotation marks omitted)). The D.C. Circuit concluded that because the Supreme Court had articulated the more deferential standard in the context of contract negotiations, a context that did not implicate the special role of union as employer and in which public policy discouraged "judicial second-guessing" of negotiated labor agreements, *O'Neill* "did not intend to weaken the standard of review applied to a union's operation of a hiring hall." *Id.*

In *Jacoby*, the D.C. Circuit reiterated the reasoning it articulated in *Plumbers & Pipe Fitters* in holding that the duty of fair representation also precludes departures from established exclusive hiring hall pro-

cedures and that the Board had articulated an erroneous view of the law in concluding that the duty of fair representation did not apply when such departures were caused by union negligence. 233 F.3d at 616–17. The court further noted that although several statements in *O'Neill,* if read in isolation, might support the Board's determination that a highly deferential standard of review should apply in evaluating a union's hiring hall operations, *O'Neill's* focus on "negotiation[s]" revealed a critical difference in context that did not account for the union's potential for coercing union membership through its operation of a hiring hall. *Id.* at 616.

In remanding to the Board to reconsider whether the Union's negligent deviations from established hiring hall procedures constituted an unfair labor practice in light of the Union's heightened duty of fair dealing, *Jacoby* reiterated the standard for establishing an unfair labor practice that it had set out in *Boilermakers Local No. 374 v. NLRB,* 852 F.2d 1353, 1358 (D.C.Cir. 1988). *See Jacoby,* 233 F.3d at 615. The court recognized, as it had previously explained in *Boilermakers,* that an aggrieved employee need not prove that a union had the specific intent to discriminate on the basis of union membership or activity, as a union commits an unfair labor practice if it operates its exclusive hiring hall arbitrarily or without reference to objective criteria, thereby adversely affecting the employment status of the individuals it is expected to represent. *See id.* at 615.

In addition, because the power that is associated with operating a hiring hall is in itself likely to encourage union membership, the *Jacoby* court held that it would presume in the exclusive hiring hall context, as we have also held, that any union action that causes a worker to be fired or that prevents a worker from being hired is designed to encourage union membership.

*See id.; accord Carpenters Union,* 769 F.2d at 581–82. Essentially, the unspoken message conveyed by such actions is that union considerations likely affect the ability of individuals to obtain favorable treatment in referrals and thereby secure employment. *See Stage Employees Local,* 2000 WL 1311111, at *3. Thus, when a union causes a worker to be fired or prevents a worker from being hired, the burden shifts to the union to justify its actions. *See Jacoby,* 233 F.3d at 615; *accord Carpenters Union,* 769 F.2d at 581–82. This presumption can be rebutted only by showing either that the union acted according to a valid union security clause or that the union's action was " 'necessary to the effective performance of its function of representing its constituency.' " *Radio–Elecs. Officers Union v. NLRB,* 16 F.3d 1280, 1284 (D.C.Cir.1994) (quoting *Road Sprinkler Fitters Local Union No. 669 v. NLRB,* 778 F.2d 8, 11 (D.C.Cir.1985)); *Int'l Alliance of Theatrical Stage Employees,* 312 N.L.R.B. 123, 127, 1993 WL 361176 (1993).

■ Following the Board's decision in the present case, the Board, in reconsidering its initial decision in *Steamfitters Local Union No. 342 (Jacoby)* after remand by the D.C. Circuit, acknowledged the court's holding in *Jacoby* and held that in operating an exclusive hiring hall, a union owes a heightened duty of fair representation to all applicants using the hiring hall. *See Steamfitters Local Union No. 342 (Jacoby),* No. 32–CB–4435, 2001 WL 1220502, at *3 (N.L.R.B. Sept.28, 2001) (applying the standard set forth in *Jacoby,* although ultimately finding that the union's negligent conduct did not amount to an unfair labor practice). We agree with the D.C. Circuit, and as now recognized by the Board, that *O'Neill* did not intend to weaken the heightened duty of fair dealing that applies to a union's operation of an exclusive hir-

ing hall. Rather, in administering a hiring hall, a union has a heightened duty of fair dealing that requires it to operate by "reference to objective criteria." *Plumbers & Pipe Fitters*, 50 F.3d at 32, *Jacoby*, 233 F.3d at 616–17.

Here, in reviewing the Union's refusal to reinstate Lucas to the hiring hall, the Board applied the more deferential *O'Neill* standard. This was error because a heightened duty of fair dealing applies to a union's operation of an exclusive hiring hall.

### B.

◼ Although ordinarily we would remand to the Board so that it could reconsider its decision under the correct legal standard, *see Perkins v. Marine Terminals Corp.*, 673 F.2d 1097, 1105 (9th Cir. 1982), remand is not necessary in this case. In dismissing Lucas's complaint, the Board, contrary to the ALJ, found that the evidence supported the Union's necessity defense. Having made this critical factual determination, it is our responsibility to determine whether the Board's decision is supported by substantial evidence. *Compare Todd Pac. Shipyards Corp.*, 914 F.2d at 1320 (holding that where the Board had already made the necessary factual evaluation underlying the legal standard to be applied, it then becomes the court's responsibility to conduct an independent review of the record to determine whether the Board's findings were supported by substantial evidence), *with Perkins*, 673 F.2d at 1105 (holding that where the Board misapplied the law and declined to review the ALJ's factual determinations as a result, the court should decline to reach the issue in the first instance) *and NLRB v. HMO Int'l/Cal. Med. Group Health Plan, Inc.*, 678 F.2d 806, 810–11 (9th Cir. 1982) (concluding that where the correctness of the decision depends upon determinations of fact that an administrative body has not yet made, a reviewing court must remand for the administrative body's analysis of the issue). Upon review of the record, we conclude that the Board's determination that the Union's refusal to readmit Lucas to its exclusive hiring hall was necessary to promote the efficiency and integrity of its hiring hall operations was not supported by substantial evidence.

### II.

◼ As noted, we have previously recognized that any union activity that prevents an employee from being hired is presumptively designed to encourage union membership, thereby placing the burden on the union to justify its actions. *See Carpenters Union*, 769 F.2d at 581–82. We also agree with the D.C. Circuit that this presumption can be overcome only by establishing either that the union acted in accordance with a valid union security clause [7] or that the union action was necessary to the effective performance of its duty to represent its constituency. *See Radio–Elecs. Officers*, 16 F.3d at 1284.

Here, in determining that the Union's actions were necessary for the effective operation of its exclusive hiring hall, the Board purported to rely on Lucas's alleged record of fifteen years of misconduct. The evidence admitted at the administrative hearing, however, does not include any evidence of Lucas's alleged misconduct at work assignments, towards Union members or Union officials.[8] Although evi-

---

7. The Labor Agreement does not include a union security clause.

8. The Union submitted several letters and voluntary statements to the Regional Director in response to Lucas's 1994 unfair labor practices charge. These documents detailed specific instances of misconduct that formed the basis of both the Union's decision to dis-

dence of Lucas's alleged misconduct was submitted to the Regional Director during his investigation of Lucas's May 1994 charge, that charge was dismissed when the Regional Director refused to issue a complaint in June 1994. As noted, that investigation was distinct from the proceedings related to Lucas's 1995 complaint. The administrative record reflects that, despite several attempts by the Union, the ALJ did not admit evidence of any specific instances of Lucas's alleged misconduct.

What the record reflects is that the Union expelled Lucas from the hiring hall for alleged misconduct, but the nature of the alleged misconduct, its frequency, the identities of the alleged victims and the employers' responses, if any, were not admitted into evidence. The record also reveals that the Union neither informed Lucas of his expulsion nor notified him that his expulsion was permanent and that there was nothing he could do to qualify for re-admission to the hiring hall.[9]

Further, as the Union acknowledged, its refusal to re-register Lucas was not guided by any objective criteria.[10] It offered no explanation for its refusal to consider Dr. Larson's opinion regarding Lucas's psychological well-being and his ability to work productively. In sum, just why the Union's continued refusal to readmit Lucas was necessary to the effective operation of the hiring hall is a mystery. In order to overcome the presumption that these actions were designed to encourage union membership, the Board relied on documents that were not admitted into evidence at the administrative hearing. Without an evidentiary basis in the record to support the Board's resolution of this

---

charge Lucas and the Regional Director's refusal to issue a complaint on that matter. At the administrative hearing, the General Counsel sought to exclude these letters and statements by way of a motion in limine. The ALJ, however, did not rule on that motion "because the material the General Counsel sought to exclude from the record, has, for the most part, not been admitted ... [S]aid documents were not admitted in support of any substantive issue in this case."

9. The General Counsel's letter informing Lucas that he would not issue a complaint on his May 1994 charge was the only written notice that Lucas received informing him that he had been expelled from the hiring hall. Contrary to the Board's argument, this notice did not establish that Lucas knew that his expulsion was permanent.

10. The Board determined that although the Union had not acted in accordance with a specific, written policy governing expulsion and re-admission, there was no legal requirement that a union operating a hiring hall maintain a system for re-admission, and further, relying on *Local 357, Int'l Bhd. of Teamsters*, 365 U.S. 667, 676, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961), it concluded that it would be inappropriate for the Board to dictate such rules for unions. *But see, e.g., Int'l Alliance of*

*Theatrical Stage Employees*, 312 N.L.R.B. at 127 (finding that a union violated the Act where its stated reasons for permanently expelling an employee from the hiring hall were not genuine); *Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 118*, 309 N.L.R.B. 808, 811, 1992 WL 389435 (1992) (concluding that a union violated its duty of fair representation in departing from its own contractual standards in administering its referral system); *Plumbers & Steamfitters Local No. 40*, 242 N.L.R.B. 1157, 1161, 1979 WL 9190 (1979) (finding that a union's resort to self-help in disregard of contractual procedures for resolving hiring hall dispute established a violation of the Act). *See also Local 357, Int'l Bhd. of Teamsters*, 365 U.S. at 676, 81 S.Ct. 835 (holding that the Board may not dictate *specific* procedures and rules that a union must adopt, not that the Board errs when it determines that a union engaged in unfair labor practices by failing to operate in accordance with objective criteria). In light of our determination that the Board's decision was not supported by substantial evidence, we need not determine whether the absence of any objective criteria constitutes a separate basis for concluding that the Union acted in an arbitrary manner.

issue, we conclude that the Board's decision was not supported by substantial evidence.

■ Consequently, we reverse the decision of the Board and remand for entry of an order in favor of Lucas. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers, Local 283 v. Scofield,* 382 U.S. 205, 212, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965) ("A decision of the reviewing court to set aside a Board order dismissing a complaint has the effect of returning the case to the Board for further proceedings. This normally results in the Board's entering an order against the charged party."); *see also Helton v. NLRB,* 656 F.2d 883, 897 (D.C.Cir.1981) (granting employee's petition for review and directing the NLRB to submit a proposed decree in accordance with its opinion). We need not consider Lucas's request that the Union reimburse him for the $500 that he expended for the psychological testing. We leave the appropriate remedy to the Board.[11]

**The Petition for Review is GRANTED, the Decision of the Board is REVERSED, and the case is REMANDED to the Board.**

WALLACE, Senior Circuit Judge, concurring:

While I join the majority's conclusion that the Board's decision was not supported by substantial evidence, I cannot join in its remand for entry of an order in favor of Lucas. Because I would remand for further findings, I write separately.

In support of its remand for entry of an order in favor of Lucas, the majority cites *International Union, United Automobile Aerospace & Agriculture Implement*

*Workers, Local 283 v. Scofield,* 382 U.S. 205, 212, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965), which held, "[a] decision of the reviewing court to set aside a Board order dismissing a complaint has the effect of returning the case to the Board for further proceedings. This normally results in the Board's entering an order against the charged party." 382 U.S. 205, 212, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965). The majority ignores footnote 5 on the same page, where the Supreme Court emphasized, "[t]here are, of course, cases in which the Court of Appeals will remand to the Board to take additional evidence." *Id.* n. 5.

Despite this clear language, the majority inexplicably interprets the Supreme Court's recognition that the Board "normally" enters an order against the charged party as obviating the need to remand for further proceedings. Not only does this ignore *Scofield's* unambiguous text, it also violates the Supreme Court's later command that a Board's order may be corrected without remand only in the "exceptional situation in which crystal-clear Board error renders a remand an unnecessary formality." *N.L.R.B. v. Food Store Employees Union,* 417 U.S. 1, 8, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974). This case does not present such an exceptional situation. It appears that the Union could present substantial evidence of Lucas's misconduct. To hold that the Board's finding of fact in this case was not supported by substantial evidence does not mean that substantial evidence does not exist.

The majority's disposition is also at odds with years of Ninth Circuit precedent. *SKS Die Casting & Machining, Inc. v. N.L.R.B.,* 941 F.2d 984, 990 (9th Cir.1991) (remanding to the Board for further find-

---

11. In light of our disposition, we need not address the Board's refusal to draw an adverse inference from the Union's failure to respond to the General Counsel's subpoena duces tecum.

938

ings where the Board failed to make a necessary factual finding to support its decision); *M.W. Kellogg Constructors, Inc. v. N.L.R.B.*, 806 F.2d 1435, 1442 (9th Cir. 1986) (same); *Dash v. N.L.R.B.*, 793 F.2d 1062, 1070, 1071 (9th Cir.1986) (same, explaining that the court "must" remand). The majority does not attempt to distinguish this case from *SKS, M.W. Kellogg,* and *Dash.*

Finally, the majority's disposition is at odds with common sense. The Board determined that the Union satisfied the necessity defense without requiring evidence of the fact or nature of Lucas's alleged misconduct. The Union did not offer to the Board the evidence the majority now requires because, at the time, the Union did not need to. The Board found for the Union on a different basis. Similarly, the ALJ thought this evidence irrelevant to his decision and neither admitted nor excluded it. It could very well be that the Union had boxes and boxes of evidence it wanted admitted. Now, the majority holds that the Board needed this evidence, a holding with which I fully agree. But the majority then concludes that Lucas is entitled to an order in his favor although the Union *never* got a full opportunity to present all its evidence to a competent fact-finding authority. We cannot blame the Union for sins of the ALJ and the Board.

I would remand to permit the Union an opportunity—its first—to present evidence that Lucas either engaged in misconduct or, though he did not engage in misconduct, he was accused of committing acts of misconduct of such a nature that it was necessary for the Union to refuse to refer Lucas. The opinion expresses no opinion as to whether evidence of the latter would be sufficient for the necessity defense, and I would leave it to the Board to decide.

*See, e.g.,* 48 AM. JUR.2d *Labor & Labor Relations* § 1562 (2002).