PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3522
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner

v.

IMAGEFIRST UNIFORM RENTAL SERVICE, INC.

Respondent

_____

No. 17-3680
_____

IMAGEFIRST UNIFORM RENTAL SERVICE, INC.

Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent

_____

On Application for Enforcement and Cross-Petition for
Review of an Order of the National Labor Relations Board
(NLRB-1 No. 4-CA-166319)
_____

Argued October 22, 2018

BEFORE:  KRAUSE, COWEN, and FUENTES, <u>Circuit
Judges</u>

(Opinion Filed:  December 18, 2018)
_____

Julie B. Broido
Linda Dreeben
Kellie Isbell (argued)
National Labor Relations Board
1015 Half Street, S.E.
Washington, DC 20570

    <u>Attorneys for Petitioner in No. 17-3522</u>

Christopher J. Murphy (argued)
Michael K. Taylor
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

    <u>Attorneys for Petitioner in No. 17-3680</u>

_____

OPINION OF THE COURT
_____

COWEN, <u>Circuit</u> <u>Judge</u>.

The National Labor Relations Board (the "NLRB") applied for enforcement of an NLRB decision and order finding that ImageFIRST Uniform Rental Service, Inc. ("ImageFirst") violated the National Labor Relations Act ("NLRA"). ImageFirst cross-petitioned for review of the NLRB's decision and order. We will grant in part and deny in part both the application for enforcement and the cross-petition for review.

We will grant the application for enforcement and will deny the cross-petition for review as to the uncontested portions of the decision and order—specifically the NLRB's findings that ImageFirst violated Section 8(a)(1) of the NLRA by prohibiting union representatives from distributing pro-union literature in the public right-of-way adjacent to ImageFirst's facility and by attempting to remove the union representatives from the public right-of-way.

The NLRB also found that ImageFirst violated Section 8(a)(1) by threatening to summon and summoning the police when the union representatives refused to leave from the public right-of-way. We will grant ImageFirst's cross-petition for review and will deny the NLRB's application for enforcement as to this finding. Substantial evidence did not support the NLRB's finding that ImageFirst's threat to call the police and the company's call to the police were motivated solely by a

3

desire to remove the union representatives from the right-of-way. Given the evidence in the record as well as the findings of facts made by the Administrative Law Judge ("ALJ"), no reasonable finder of fact could have failed to find that ImageFirst's conduct was motivated by a broader—and reasonable—concern over its property interests based on the union representatives' repeated and ongoing forays onto its private property.

## I.

ImageFirst provides health care laundry services at a non-union facility located on Prospect Road in Columbia, Pennsylvania. The Philadelphia Joint Board, Workers United a/w Service Employees International Union filed a charge of unfair labor practices against the company. The charge arose out of the company's alleged efforts, undertaken by Bryan Cunningham (the general manager of the Columbia facility), to prevent four union representatives (Jennifer Valentin, who was the leader of the group, Gladys Toledo, Silvia Patterson, and Tina Gainer) from distributing pro-union leaflets outside the facility on the morning of December 16, 2015. Section 7 of the NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) provides that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of" their Section 7 rights. 29 U.S.C. § 158(a)(1). After an initial investigation, the NLRB General Counsel filed a complaint of unfair labor practices against ImageFirst. The ALJ conducted an evidentiary hearing and

4

subsequently issued a decision and a proposed order.

The ALJ considered whether ImageFirst violated Section 8(a)(1) by demanding that the union representatives leave a public right-of-way and threatening to summon and then summoning the police while they were distributing handbills to its employees. The public right-of-way includes the shoulder running parallel to Prospect Road. ImageFirst's property is separated from the shoulder by a concrete curb. The curb borders a strip of grass, which itself borders a small parking lot, all of which is owned by ImageFirst. In addition, ImageFirst's property encompasses the driveway connecting the parking lot with Prospect Road. ImageFirst has a fee title to the centerline of Prospect Road, subject to an easement of public use. According to the ALJ, ImageFirst failed to meet its burden under Indio Grocery Outlet, 323 NLRB 1138, 1141 (1997), enforced sub nom. NLRB v. Calkins, 187 F.3d 1080 (9th Cir. 1999), to show that, when Cunningham demanded that the police remove the union representatives distributing union literature on the public right-of-way, the company possessed a property interest in the shoulder of the road allowing it to exclude the union representatives.

The ALJ characterized the issue before him as "whether the union representatives were engaged in union leafleting on the Respondent's property and not on the shoulder of the Prospect Road and whether the Respondent was concerned over public safety." (JA11.) "Counsel for the Respondent argued that Cunningham had only wanted the four union representatives removed from the facility's property. While the Respondent's property included the public right-of-way, the Respondent concedes that it had no problem with the public or the representatives standing and walking on the shoulder." (Id.)

5

The ALJ, however, found that this was not the company's position on the morning of December 16:

> I do not credit Cunningham's testimony that he merely wanted the four union representatives removed from the company's property.
>
> In my opinion, I believe that the Respondent wanted the union representatives removed from the Respondent's property that it mistakenly believed included the shoulder of Prospect Road and that it could exercise control over the shoulder of the road based upon its ownership of a fee to the center of the road.
>
> I find that Cunningham was operating under a mistaken belief that the Respondent control of its property extended to the middle of the road without regards to the public right-of-way or easement. . . . .

(JA11.)

The ALJ made this finding based on several considerations. The ALJ explained that the union representatives, even if they had initially been standing on the grassy area, moved to the shoulder minutes after Cunningham spoke with them and asked them to move. When he spoke with them the second time (after consulting with his superiors), they thereby had already moved to the shoulder. Cunningham asked them to leave, and Valentin (the union field coordinator) said that they had a right to be there. Cunningham then had no authority to ask them to leave or to threaten to call the police because they did exactly what they were told to do. "There was

6

no reason for Cunningham to call the police because the four representatives were now on the shoulder and not on the Respondent's property. It is obvious to me that Cunningham was under a mistaken belief that the Respondent could continue to demand that the union representatives to [sic] leave a public right-of-way." (Id.) Acting based on this mistaken belief, Cunningham called the police, told them that the union representatives were trespassing, and demanded that they be arrested. Cunningham acquiesced only after the police told him that the shoulder was a public right-of-way and that the union representatives were allowed to stay while they were on the shoulder:

> Here, testimony regarding the location and consequences of the activities of the handbillers was provided by the General Counsel's witnesses and Cunningham. Although Cunningham told them to leave Respondent's property, both Valentin and Grainer testified, without contradiction, that they were situated on the public right-of-way after their initial conversation with Cunningham. Cunningham admitted upon exiting his car on the second occasion that the union representatives were on the shoulder. He also conceded and did not protest once the police told him that the union representatives could stay on the shoulder, which the police corrected him that it was a public right-of-way.

(Id.)

In the heading to the next section of his decision, the ALJ stated that "*The Trespassing was Insignificant to Warrant the*

7

*Removal of the Union Representatives*."  (Id.)

Responding (again) to ImageFirst's assertion that Cunningham wanted the union representatives to leave its property, the ALJ found that, although upset that they were initially standing on the grassy area of the property, Cunningham did not truly believe that the alleged trespassing was so egregious to warrant police removal (a finding supported by the fact that he never demanded that the union representatives be removed or arrested for any alleged trespassing that may have occurred before the arrival of the police).  "On this point, I fully credit the testimony of Officers Stutzman and Villano," because they were neutral observers who testified in a candid and open manner consistent with the corroborated record.  (JA12 n.15.)  Officer Stutzman testified that it would not be trespassing if an owner told the union representatives to get off the property and they did so.  "This is exactly what had occurred here.  According to Cunningham, above, he observed the union representatives on the grassy area and in the driveway, told them to get off his property and by the time he finished the calls to [his supervisors] Brown and Geraghty, they had already moved to the shoulder."  (Id.)  Officer Villano testified that Cunningham "never demanded they were on the property and refused to leave."  (Id.)  "'If we would arrive and Mr. Cunningham would have said they were on the property and refused to leave when told to do so, that would have been a trespass and they would have been arrested for trespassing."  (Id. (quoting JA423).)  According to Officer Villano, Cunningham "didn't say that" to him.  (Id. (quoting JA423).)

However, the ALJ then explained in some detail that the union representatives' forays—including their incursions onto

8

ImageFirst's driveway—did not rise to the level of trespassing and that, even if they did, would not justify calling the police:

> Officer Stutzman also recalled one leafletting occasion during his presence with a representative walking to the car. Officers Stutzman and Villano took no action even though the representative would more likely than not had entered into the Respondent's driveway while under his observation ([JA437, JA438]). Cunningham also took no action to point the trespassing to the officers.
>
> My point is that a brief foray on the grassy area to talk to Cunningham (which I cannot conceive this to be trespassing, as argued by the Respondent, since there is an implicit understanding that one would approach another at mid-point to talk and Cunningham did not venture onto the grassy area) or to hand out a leaflet in the driveway would not reasonably be considered trespassing. Such handful of very brief and isolated forays on the lip of the driveway is insignificant to warrant a finding that the union representatives were trespassing. I would also take note that the Respondent did not subsequently contact the police after December 16 on alleged trespassing by union representatives and members even though it was aware of the trespassing ([JA578-JA582]).
>
> Assuming such minor infractions on December 16 are considered as trespassing, I also

find the trespassing as infrequent, insignificant, not substantial and merely harmless error in that the union representatives did not venture far from the shoulder, the incursions were infrequent, the union representatives were very brief in approaching a driver and quick to return to the shoulder, and their presence did not cause any safety or other hazardous condition of public concern. Officer Villano testified that it would not be trespassing if the union representatives were briefly standing on the concrete curb to avoid traffic ([JA421]). I find such infractions no different as when a pedestrian or cyclist would stop and rest on the curb or grassy area of the Respondent's property.

To the extent that Valentin and Gainer crossed the line onto private property, which I have found to be infrequent and quick forays, the credited testimony establishes that such incursions were minimal and were not disruptive to operations and therefore not sufficient to constitute a trespass which would justify summoning the police or with the police taking any action to arrest the representatives. See, e.g., [New Jersey Bell, 308 NLRB 277 (1992)], above (causing the arrest and filing of a criminal complaint against a union agent who remained on employer's premises 3 to 4 minutes after being told to leave found to violate the Act).

Accordingly, I find that the Respondent attempted to remove the union representatives

10

engaged in union handbilling in violation of the Act and not because they were trespassing on the Respondent's property.

(JA12-JA13 (also noting that Deanna Robinson's testimony indicating that she was approached by union representative in parking lot was consistent with Valentin's admission that Patterson entered into parking area but that this approach was not known to Cunningham and thereby could not have been basis for summoning police).)

Furthermore, the ALJ found, on the one hand, that ImageFirst's actions were not motivated by safety concerns. On the other hand, the ALJ determined that ImageFirst did not instruct a van driver transporting several employees to drive past the union representatives and that the company did not engage in surveillance of employees receiving handbills from the union representatives.

Based on these factual findings and discussion of the relevant legal principles and case law, the ALJ made, inter alia, the following conclusions of law:

> 3. The Respondent violated Section 8(a)(1) of the Act on about December 16, 2016, by prohibiting union representatives from distributing prounion literature in the public right-of-way adjacent to the Respondent's facility.
>
> 4. The Respondent violated Section 8(a)(1) of the Act on about December 16, 2015, by attempting to remove the union representatives from the public right-of-way.

11

5. The Respondent violated Section 8(a)(1) of the Act on about December 16, 2015, by threatening and summoning the police when the union representatives refused to leave from the public right-of-way.

6. The Respondent did not otherwise violate Section 8(a)(1) of the Act by allegedly engaging in surveillance of employees receiving the union literature from the union representatives about on December 16, 2015.

7. The Respondent did not otherwise violate Section 8(a)(1) of the Act when Cunningham allegedly instructed the van driver to drive past the union representatives preventing employees from receiving union handbills.

(JA16.) The ALJ recommended that ImageFirst be ordered to post a remedial notice and be ordered to cease and desist from prohibiting union representatives from distributing union literature to employees in the public right-of-way, attempting to remove them from the public-right-of-way, or, in any like or similar manner, interfering with, restraining, or coercing employees in the exercise of their Section 7 rights.

A three-member panel of the NLRB, with Chairman Miscimarra concurring, affirmed the ALJ's rulings, findings (including the ALJ's credibility determinations), and conclusions. The majority adopted the recommended order as modified. "There were no exceptions to the judge's dismissal of the allegations that the Respondent violated 8(a)(1) by instructing a van to drive past the union representatives, thereby preventing employees in the van from receiving the handbill, or

by surveilling employees as they received the union handbill." (JA1 n.1.) According to the NLRB majority, ImageFirst was not motivated by a reasonable concern to protect its own property interest:

> In adopting the judge's finding that the Respondent violated the Act by threatening to summon and summoning the police, we find that the Respondent's conduct was not motivated by a reasonable concern over protecting its property interest. See Nations Rent, Inc., 342 NLRB 179, 181 (2004). Before the Respondent called the police, the union representatives had already moved to the shoulder of the highway at the Respondent's request; the union representatives were on the shoulder, not the Respondent's private property, when the police arrived; and it was not reasonable for the Respondent to believe it had a property interest in the shoulder that privileged it to exclude the union representatives from the shoulder, in light of the open and notorious public use of the shoulder by, for example, pedestrians, cyclists, and people picking up their mail, of which the Respondent was well aware. See Food for Less, 318 NLRB 646, 650 fn.6 (1995) ("[E]ven assuming the [r]espondent properly controlled the sidewalk, it caused the union representatives to be ejected not only from the sidewalk but from [other areas]—clearly beyond any authority pursuant to a property interest held by the [r]espondent."), enfd. in rel. part 95 F.3d 733 (8th Cir. 1996). Accordingly, we find that the Respondent violated the Act

13

> when it threatened to call and called the police on
> the basis that it sought to have the union
> representatives removed or arrested because they
> were engaged in protected union handbilling on
> the public shoulder of the highway adjacent to the
> Respondent's private property.

(JA1 n.1.)  The majority stated that this finding was not based on the ALJ's own finding of de minimis trespassing.  "We do not rely on the judge's finding that the union representatives' entry onto the Respondent's private property—by briefly standing on a grassy area and the Respondent's driveway—was a de minimis trespass.  Accordingly, we do not address our colleague's discussion of that finding."  (Id.)

That colleague, Chairman Miscimarra, explained in his concurring opinion that, while the union representatives at times stepped onto the grassy area between the shoulder of the road and the parking lot to avoid passing traffic, they confined themselves to the shoulder after they were told to stay off ImageFirst's property.  "If an automobile stopped at the bottom of the driveway, a representative would take a few steps into the driveway to deliver the leaflet."  (JA2.)  Citing Nations Rent and Food for Less, Chairman Miscimarra joined the majority in finding that ImageFirst violated the NLRA both by demanding that the union representatives stop leafleting from the shoulder and by threatening to call and then calling the police when they refused.  Chairman Miscimarra disagreed with the ALJ's finding that the representatives did not trespass when they entered the driveway to distribute handbills or that, if they did trespass, it was de minimis and excusable.  (See JA2 n.1 (further summarizing ALJ's trespassing findings).)  "This finding is unnecessary to the disposition of this case, and my colleagues do

14

not rely on it. I believe that the Board should repudiate this analysis because it is directly contrary to Supreme Court precedent." (JA2.) Relying on Lechmere, Inc. v. NLRB, 502 U.S. 527 (1992), Chairman Miscimarra then explained why the union representatives had no Section 7 right to trespass on ImageFirst's property, regardless of the scope or extent of their trespass.

## II.

The NLRB possessed jurisdiction over this proceeding under Section 10(a) of the NLRA, 29 U.S.C. § 160(a). We have jurisdiction pursuant to Section 10(e) and (f), 29 U.S.C. § 160(e), (f).

This Court applies a plenary standard over questions of law and the NLRB's application of legal precepts (although we also defer to its reasonable interpretations of the NLRA). See, e.g., Trimm Assocs., Inc. v. NLRB, 351 F.3d 99, 102 (3d Cir. 2003). Factual findings by the NLRB are reviewed under the substantial evidence standard. See, e.g., § 160(e), (f); Adv. Disposal Servs. East, Inc. v. NLRB, 820 F.3d 592, 606 (3d Cir. 2016). Substantial evidence requires more than a scintilla, and it means relevant evidence that a reasonable mind might accept as adequate to support a conclusion. See, e.g., id. While deferential, this standard requires us to consider both the evidence in the record supporting the NLRB's findings of fact as well as "whatever in the record fairly detracts" from its findings. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

## III.

ImageFirst does not challenge the summary enforcement of certain aspects of the NLRB's decision and order.

15

"ImageFirst is not disputing the NLRB's limited finding that Cunningham's erroneous belief that the Company had a property interest in the shoulder of the road was unreasonable, and thus, a violation of the Act." (ImageFirst's Brief at 1 n.1.) "The Company is not seeking review of the Board's conclusion that it violated the Act by seeking to have the Union representatives removed from the shoulder of Prospect Road." (Id. at 9 n.4; see also id. at 19 n.10 ("Here, [ImageFirst] concedes that Cunningham's attempt to have the Union representatives excluded from the shoulder of Prospect Road was improper.").) We will grant the application for enforcement filed by the NLRB and will deny the cross-petition for review filed by ImageFirst as to the NLRB's findings that ImageFirst violated Section 8(a)(1) of the NLRA by prohibiting union representatives from distributing pro-union literature in the public right-of-way adjacent to ImageFirst's facility and by attempting to remove the union representatives from the public right-of-way.

However, ImageFirst does argue that the NLRB failed to consider undisputed facts found by the ALJ in its determination that Cunningham's call to the police was not motivated by a reasonable concern for the company's property rights. We agree. In short, substantial evidence did not support the finding by the NLRB that ImageFirst's threat to call the police and the company's call to the police were motivated solely by a desire to remove the union representatives from the public right-of-way. Given the evidence in the record as well as the ALJ's findings of fact, no reasonable finder of fact could have failed to find that ImageFirst's conduct was motivated by a broader concern over its property interests, implicated by the union representatives' repeated and ongoing forays onto its private property. A reasonable fact-finder would also have to find that the

16

company's concern was reasonable. We will therefore grant ImageFirst's cross-petition for review and deny the NLRB's application for enforcement as to the finding by the NLRB that ImageFirst violated Section 8(a)(1) of the NLRA by threatening to summon and summoning the police when the union representatives refused to leave from the public right-of-way.

Generally, "an employer cannot be compelled to allow distribution of union literature by nonemployee organizers on his property." Lechmere, Inc. v. NLRB, 502 U.S. 527, 533 (1992). "Where the 'location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them,' [NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 113 (1956)], employers' property rights may be 'required to yield to the extent needed to permit communication of information on the right to organize,' [Babcock, 351 U.S. at 112]." Id. at 533-34. It is uncontested that no such exception could apply in this proceeding. It is also uncontested that an employer cannot restrict union access to public property or private property from which the employer does not possess the right to exclude others. See, e.g., Indio Grocery Outlet, 323 NLRB 1138, 1141 (1997) ("The Board has stated that 'in cases in which the exercise of Section 7 rights by nonemployee union representatives is assertedly in conflict with a respondent's private property rights, there is a threshold burden on the respondent to establish that it had, at the time it expelled the union representatives, an interest which *entitled it* to exclude individuals from the property [emphasis in original].'" (quoting Food for Less, 318 NLRB at 646, 649 (1995), aff'd in relevant part sub nom. O'Neil's Markets v. United Food & Commercial Workers Union, Meatcutters Local 88, 95 F.3d 733 (8th Cir. 1996)), enforced sub nom. NLRB v. Calkins, 187 F.3d 1080 (9th Cir. 1999).

17

It is well established that there is no NLRA violation where an employer can show that its threat to call or its call to the police "is motivated by some reasonable concern, such as public safety or interference with legally protected interests." Nations Rent, Inc., 342 NLRB 179, 181 (2004) (citing Great American, 322 NLRB 17, 21 (1996)); see also, e.g., Sprain Brook Manor Nursing Home, LLC, 351 NLRB 1190, 1191-92 (2007) (applying "reasonable concern" rule). As the NLRB explained in Nations Rent, "[s]o long as the employer is acting on the basis of a reasonable concern, Section 8(a)(1) is not violated merely because the police decide that, under all the circumstances, taking action against [the union representatives] is unwarranted." Id. This rule thereby implicates both subjective and objective components. The employer must possess a subjective concern about interference with legally protected interests, such as its private property rights. The employer's concern then must be objectively reasonable. ImageFirst manifestly satisfied both components.

According to the NLRB, the evidence in the record demonstrated that Cunningham called the police because he mistakenly believed that ImageFirst could eject the union representatives from the shoulder—and not because they were on the company's driveway or other parts of its property. The NLRB points out that the union representatives were on the shoulder when Cunningham threatened to summon the police, when he called the police, and when the police officers arrived. While conceding that the union representatives had initially entered ImageFirst's property, the NLRB insists that they moved to the public right-of-way after their initial conversation with Cunningham and then stayed there. "The union representatives testified that they remained in the public right-of-way after their initial conversation with Cunningham. ([JA12, JA202-JA203,

18

JA220, JA225-JA228, JA234, JA331-JA332, JA336-JA337].)
Officers Villano and Stutzman likewise testified that the
representatives were on the shoulder when they arrived and
remained there while they were on the scene. ([JA7, JA8,
JA391, JA429-JA430])." (NLRB's Brief at 16-17.) Officer
Villano testified that he asked Cunningham where the union
representatives were when they trespassed. "And [Cunningham]
said they were basically where they were at when I got there.
That he had – in his conversation with the owner of the business,
the owner of the business told him that the business owns that
section of Prospect Road up to the double yellow lines there.
And since the women were on that area of Prospect Road that
[sic] they considered that trespassing." (JA393.) Officer
Villano explained to Cunningham that the shoulder was a public
right-of–way, and Cunningham acquiesced in the union
representatives remaining on the shoulder. Admittedly, the ALJ
did reject ImageFirst's contention that Cunningham only wanted
the union representatives removed from the property.
"Although Cunningham told them to leave Respondent's
property, both Valentin and Grainer testified, without
contradiction, that they were situated on the public right-of-way
after their initial conversation with the police." (JA12.) The
ALJ also pointed out that "Officer Villano testified Cunningham
never demanded they were on the property and refused to
leave." (Id.)

Nevertheless, Cunningham was clearly concerned about
more than the shoulder. Cunningham testified that he witnessed
these individuals continue to make forays onto the company's
driveway to leaflet vehicles—even after they had moved to the
shoulder from the grassy area. He observed these incursions
onto ImageFirst's private property when he first arrived at the
facility (in fact, a union representative entered the driveway to

19

hand him a leaflet) and when he went to speak with them for the first time. Asked about their second conversation, Cunningham testified that the driveway leafleting continued while he was "interacting" with the union representatives. (JA484.) "All the leafletings that I saw was going on right in this area [indicating ImageFirst's driveway]." (Id.) According to the ALJ, "Valentin [who was in charge of the union representatives] admitted [on cross-examination] that she was but should not have been in the driveway." (JA4 (footnote omitted).) "Valentin admitted that on occasions, a representative may have entered the driveway but no more than 5-10 feet from the shoulder area and would immediately leave the area." (Id.) The union field coordinator also indicated that the union representatives were standing on the curb or the grassy area as much as ten percent of the time that they were present at ImageFirst's facility (i.e., between 5% and 10% for Valentin herself, 0% and 5% for Gainer and Patterson, and "closer to 90% of the time on the shoulder" for Toledo (JA238)).

As counsel for ImageFirst acknowledged at oral argument, the ALJ may not have enumerated the number of forays that occurred before the call to the police was made, after the call, and while the police were present on the scene. The ALJ did undertake a full analysis to explain why *The Trespassing Was Insignificant to Warrant the Removal of the Union Representatives.*" (JA12.) If the driveway forays had neither continued to occur nor furnished a motivation for calling the police, it would have been unnecessary for the ALJ to explain why such forays either did not constitute trespasses or, if they did, why such trespasses failed to constitute an adequate justification for calling the police. Likewise, the ALJ never specifically found that Cunningham's actions were motivated solely by a desire to remove the union representatives from the

20

shoulder. On the contrary, the ALJ refused "to credit Cunningham's testimony that he *merely* wanted the four union representatives removed from the company's property." (JA11 (emphasis added).) "In my opinion, I believe that the Respondent wanted the union representatives removed from the Respondent's property that it mistakenly believed included the shoulder of Prospect Road." (Id.) Yet ImageFirst's property also "included" the curb, the grassy area, and the driveway itself.

Significantly, the ALJ found that a driveway foray occurred while the police were present and that this incursion was witnessed by one of the police officers. According to the ALJ, "Officer Stutzman also recalled one leafletting occasion during his presence with a representative walking to the car." (JA12.) "The representatives would more likely than not had entered into Respondent's driveway while under his observation." (JA12 (citing JA437, JA438).) The NLRB asserts that "whatever happened could not have served as the basis for Cunningham's call to police, as they were already on the scene." (NLRB's Brief at 22 n.6.) While technically correct, this subsequent incursion onto ImageFirst's private property (which, after all, did take place despite the presence of two police officers) was consistent with the evidence and factual findings showing that such incursions continued to occur both before and after Cunningham's call to the police. The NLRB also dismisses the finding as "a statement by the administrative law judge" and observes that "Stutzman was not certain where the leafleting occurred ([JA437-JA438]), and he and Officer Villano concluded the representatives were not trespassing." (NLRB's Brief at 22 n.6.) The ALJ also noted that Officer Stutzman indicated on direct examination that the union representative was standing on the shoulder when the car was turning into the

driveway. However, the ALJ appropriately relied on the "candid and open" testimony of a "neutral" observer that "was consistent with the corroborated record." (JA12 n.15.) "On cross-examination by counsel for the Respondent, Officer Stutzman did not recall where the representative was standing when the driver was given a leaflet and did not recall which direction the car was coming from. He only remembered a representative walking over to the car to hand out a leaflet." (JA8 (citing JA437, JA438).) The ALJ therefore made a finding of fact that the police officer observed a union representative entering ImageFirst's driveway to leaflet. See, e.g., 29 U.S.C. § 160(c) (requiring NLRB to use "preponderance of the testimony" standard to decide whether person engaged in unfair labor practice).

In its own decision, the NLRB did not reject this "foray" finding or any of the other findings of fact rendered by the ALJ. On the contrary, the NLRB majority purportedly affirmed and adopted the ALJ's findings. The NLRB likewise cannot simply ignore relevant evidence. See, e.g., Universal Camera, 340 U.S. at 488 ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."); Lakeland Health Care Assocs., LLC v. NLRB, 696 F.3d 1332, 1335 (11th Cir. 2012) (stating that the NLRB cannot ignore relevant evidence detracting from its findings and that, when it fails to consider evidence, its conclusions are less likely to be based upon substantial evidence). Yet the NLRB failed to address the evidence and factual findings establishing that the threat to call the police and the subsequent call itself were motivated by a broader concern about the company's property interests. Given this evidence and the findings of fact, ImageFirst was clearly motivated by more than a desire, as the majority put it, to "have the union representatives removed or

22

arrested because they were engaged in protected union handbilling on the public shoulder of the highway adjacent to the Respondent's private property." (JA1 n.1.) It was not enough for the NLRB to state that the union representative had already moved to the shoulder of the road and were standing on the shoulder when the police arrived. At the very least, it should have addressed Cunningham's testimony that he saw the union representatives continue to make forays onto ImageFirst's driveway to leaflet vehicles, Valentin's admission that she and the other representatives would occasionally enter the driveway to distribute leaflets, and the ALJ's own factual finding of a driveway incursion witnessed by Officer Stutzman. The NLRB majority stated that "[w]e do not rely on the judge's finding that the union representatives' entry onto the Respondent's private property—by briefly standing on a grassy area and the Respondent's driveway—as a de minimis trespass." (Id.) But, under these circumstances, the ALJ's "de minimis" trespass analysis should not be dismissed so easily.

Because a reasonable fact-finder thereby would have had to find that ImageFirst's threat to call the police and the subsequent call were motivated by a broader concern about its property interests, we must turn to the objective component of the "reasonable" concern inquiry. We believe that no reasonable finder of fact could have failed to find that this concern was reasonable because, even though ImageFirst was wrong about the scope of its property rights over the shoulder, it still possessed the right to contact the police on account of the union representatives' repeated and ongoing forays onto its private property.

Initially, the NLRB has placed too much emphasis on what was happening at the exact moment that Cunningham

23

threatened to summon or summoned the police or when the police arrived. While certainly relevant, the notion of reasonableness requires consideration of the totality of the circumstances. See, e.g., NLRB v. Weingarten, Inc., 420 U.S. 251, 257 n.5 (1975) (indicating that reasonableness of discipline is determined by objective standards under all of the circumstances of the case). "Notably, the Board cites no cases to support its view that the reasonableness of Cunningham's property rights concern is a 'spot' determination, divorced from the Union's trespassory conduct he had witnessed moments prior to the call." (ImageFirst's Reply Brief at 4.) Such an approach is particularly appropriate when the union representatives' trespassory conduct continued to occur despite their interactions with Cunningham and the arrival of the police officers themselves.

"ImageFirst is not disputing the NLRB's limited finding that Cunningham's erroneous belief that the Company had a property interest in the shoulder of the road was unreasonable, and thus, a violation of the Act." (ImageFirst's Brief at 1 n.1.) But it is also undisputed that ImageFirst possessed property interests in the driveway as well as the grassy area and the curb, allowing it to exclude the union representatives and others. Counsel for the NLRB recognized at oral argument that both the majority and Chairman Miscimarra agreed that the ALJ made a mistake of law as to the propriety of "de minimis" trespasses. As we have explained, the company, even though it was wrong about the scope of its private property rights over the shoulder, was clearly motivated by a broader concern over its property interests implicated by the union representatives' ongoing property incursions. ImageFirst's shoulder error (which has resulted in additional uncontested findings of unfair labor practices) should not be used to penalize it for contacting law

24

enforcement to vindicate its own property rights.

In Nations Rent, the NLRB concluded that the employer summoned the police "based on a reasonable concern that the pickets were trespassing on its property, monitoring a police scanner, and following employees home." Nations Rent, 342 NLRB at 181. The majority ruling conceded that the employer unlawfully parked machinery outside its fence and erected scaffolding on a public easement:

> However, these facts do not establish that, in contacting the police, the Respondent was motivated by a purpose to harass rather than by its reasonable concerns. There is no dispute that trespassory picketing occurred: one of the pickets admitted trespassing on the Respondent's property. Our colleague says that the Respondent caused this trespass by moving a piece of equipment. However, that does not negate the fact of trespass. Further, there is no showing that in making way for the Respondent's equipment, the picket's sole option was to trespass. He could have also driven away on Toledo Road and returned once the equipment had been moved. There is also no dispute that the trespass ended shortly after Olinger called the police, reasonably suggesting the possible use of a police scanner. The pickets also admitted following employees as they left the Elkhart facility. In light of that fact, Olinger reasonably could be concerned that the pickets might be following employees home. This concern privileges the minimal intrusion of asking Officer Smith merely to "look into" or

"ask" the pickets whether they were doing so. Thus, for all of the foregoing reasons, we find that the Respondent's involvement of the police on May 23 did not violate Section 8(a)(1).

In asserting a contrary view, our colleague relies on the Respondent's unlawful effort to interfere with the pickets. However, that conduct does not preclude the Respondent from calling police authorities to report a reasonable concern that local laws were being violated. A contrary view would mean that a person who has violated the Act is precluded from calling local police to report local infractions. Our colleague denies that this is his view. However, that denial is premised on the asserted "spuriousness" of the Respondent's concern about the picketing. As set forth above, that concern was far from spurious.

Id.; see also Great American, 322 NLRB at 20-21 (finding that, although employer cannot assert property interest to justify handbillers' eviction from front of parking lot because it failed to show that they were trespassing on its private property, employer was justified in summoning police to evict because handbillers were causing traffic to be blocked from entering parking lot and to be backed up into street). In this proceeding, ImageFirst's mistake over its right to exclude from the shoulder "does not negate the fact of trespass" on its private property. Even though ImageFirst was wrong about the shoulder, "that conduct does not preclude the Respondent from calling police authorities to report a reasonable concern that local laws were being violated" because the union representatives were making repeated and ongoing forays onto its own property. Nations

Rent, 342 NLRB at 181.

## IV.

We will grant in part and deny in part the NLRB's application for enforcement as well as ImageFirst's cross-petition for review. We will grant the application for enforcement and deny the cross-petition for review as to the NLRB's findings that ImageFirst violated Section 8(a)(1) of the NLRA by prohibiting union representatives from distributing pro-union literature in the public right-of-way adjacent to ImageFirst's facility and by trying to remove the union representatives from the public right-of-way. We will grant the cross-petition for review and will deny the application for enforcement as to the finding by the NLRB that ImageFirst violated Section 8(a)(1) of the NLRA by threatening to summon and summoning the police when the union representatives refused to leave from the public right-of-way.